IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 9, 2018 Session



## SAMANTHA AUDREY HAAK v. CHRISTOPHER RODNEY HAAK

**Appeal from the General Sessions Court for Hardin County**
**No. 8195      Daniel L. Smith, Judge**

————————————————————

**No. W2018-00048-COA-R3-CV**

————————————————————

Mother appeals the trial court's decision to change custody to Father. Here, the trial court's findings of fact and the evidence in the record support the trial court's determination that naming Father the primary residential parent of the children is in their best interests. As such, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the General Sessions Court Affirmed**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which ARNOLD B. GOLDIN and BRANDON O. GIBSON, JJ., joined.

Mary Jo Middlebrooks, Jackson, Tennessee, for the appellant, Samantha Audrey Haak.

Terry J. Leonard, Camden, Tennessee, for the appellee, Christopher Rodney Haak.

## OPINION

### Background

Petitioner/Appellant Samantha Audrey Haak ("Mother") and Respondent/Appellee Christopher Rodney Haak ("Father") were divorced in May 2014. At the time of the divorce, the parties entered into an agreed permanent parenting plan that named Mother primary residential parent of the parties' two minor children. Under this original plan, Father was awarded weekend parenting time with holidays equally divided between the parties. Father was also ordered to pay $550.00 per month in child support and to provide health insurance for the children. At the time of the divorce, Mother lived in Savannah, Tennessee, while Father resided in Corinth, Mississippi.

Eventually, Father provided Mother notice that he was moving to New Jersey, where he was originally from. On September 1, 2016, Mother filed a petition to modify

the permanent parenting plan and for contempt. Mother alleged that Father was in contempt of court in various ways and that, due to Father's move to New Jersey, the permanent parenting plan should be modified and the costs of transportation allocated to Father. Mother also alleged that due to Father's new employment, his child support obligation should be modified to reflect his increased income. Mother's petition was not accompanied by a proposed parenting plan, and Mother never filed a proposed plan with the trial court.

Father responded in opposition to Mother's petition and filed a counter-petition to find Mother in contempt and to modify the parenting plan to name him the primary residential parent of the children. Among the allegations contained therein, Father alleged that Mother had recently been charged with two felonies: possession of a controlled substance with intent to deliver and forgery. According to Father, Mother's drug use resulted in the children being malnourished, truant from school, and unsafe in Mother's care. Father submitted a proposed parenting plan with his counter-petition, which named Father primary residential parent and allocated Mother fifty-one days of residential parenting time per year.

The trial court ordered the parties to mediate the case, but no settlement was reached. A trial thereafter occurred on August 23, 2017. At the start of trial, the trial court orally dismissed Mother's petition to modify the parenting plan because she had not filed a proposed parenting plan prior to trial as required by Tennessee Code Annotated section 36-6-405.

In her testimony, Mother admitted that she was arrested in January 2016 for "multiple felonies of possession and forgery." Mother candidly admitted that her criminal charges occurred after she developed a prescription drug addiction following the birth of the parties' youngest child; specifically, Mother testified that she abused opiates and Tramadol.[1] Eventually, on September 1, 2016,[2] Mother entered into a plea agreement whereby she pleaded guilty to one count of forgery, a felony. Under the terms of the agreement, Mother received judicial diversion, two years of supervised probation, and a $750.00 fine. As a result of her charges, Mother's license as a licensed professional nurse ("LPN") was temporarily suspended and Mother was ordered to take part in the Tennessee Professional Assistance Program ("TPAP") in order to regain and maintain her LPN license.

Following the entry of her plea, Mother testified that she voluntarily completed intensive outpatient rehabilitation and that she currently attends several alcoholics anonymous/narcotics anonymous meetings when they are available. Mother's probation officer testified that Mother is compliant with all terms of her probation, including

---

[1] Tramadol is described as "a central analgesic . . . used to manage moderate to severe pain." *Mosby's Dictionary of Medicine, Nursing, & Health Professions* 1797 (9th ed. 2013).

[2] Interestingly, this is the same day that Mother filed her petition to modify the parenting plan. Mother's plea is not mentioned in her petition.

- 2 -

passing all drug screenings. Eventually, Mother regained her nursing license through her compliance with TPAP; Mother still participates in services from this program as required to maintain her license. Mother testified that she was currently employed by a care home earning $17.00 per hour. According to Mother, she had maintained her sobriety for over eighteen months by the time of trial.

Mother agreed that her drug use affected her ability to parent for a time. Mother testified that at one point she was taking up to thirty Tramadol a day. Sometimes the drugs would cause nausea, tremors, and vomiting. Although Mother admitted that she drove the children around while under the influence of these drugs, Mother denied that the children were ever denied food due to her drug abuse. Mother admitted, however, that her drug use caused significant truancy for the parties' oldest child to the extent that Mother was summoned to juvenile court. Mother testified that she agreed to "maintain better control of it," and there have been no truancy problems since that time. According to Mother, all issues related to her drug use and parenting her children have now been resolved.

Mother also responded to Father's allegation that Mother whipped the children with a belt. Mother admitted that she initially punished the children by "whipp[ing] with a belt." After Father objected to the practice, however, Mother testified that she stopped using that tactic. Mother stated, however, that she would have continued with that form of punishment had Father not objected. Mother also admitted that she had allowed the parties' oldest child to stop taking medicine for attention deficit hyperactivity disorder ("ADHD"); Mother testified that the decision was made in conjunction with the child's doctor and that the child has been able manage his disorder without the medication.

Mother testified that when she was unemployed due to the aftermath of her drug use, she relied on her boyfriend, Shane Collier, for shelter and financial support. Mother testified that although she lives with Mr. Collier, she maintains a mailing address at her mother's home because, as Mother put it, "you never know what will happen in a relationship."[3] Mother also testified that when Father failed to provide health insurance for the children, she obtained TennCare coverage for them. Finally, Mother testified that she should be named primary residential parent because: (1) she does not want to give up custody; (2) she wants to be around the children each day; and (3) she loves the children.

Father first discussed the situation that led to his move from Mississippi to New Jersey, which Father claimed was necessitated by the sale of his rental home and the lack of employment opportunities. Father testified that the move was appropriate because his close-knit family and friends all reside in New Jersey. As an example, Father testified that his father is involved with Boy Scouts of America, which the parties' children can participate in when in New Jersey.

---

[3] Mr. Collier did not testify.

Father and his fiancé, Samantha Truglio, whom Father had dated for the past three years, live in a home they recently purchased. Testimony and photographs of the home show that it is appropriate for the children. Father testified that he currently works as an electrical contractor earning $33.00 per hour, while taking classes to become an electrician. Although Father lives with Ms. Truglio, he testified that his ability to provide for the children was not dependent on anyone but him. According to Father, he, Ms. Truglio, and the children have a close and loving relationship, despite the distance between Tennessee and New Jersey.

Father testified that neither he nor Ms. Truglio have had criminal issues. Although Father initially denied that he had "any mental problems," Father later admitted that he had previously been hospitalized for issues related to a diagnosis of bi-polar and depression. Father testified, however, that he no longer experiences symptoms related to these diagnoses. Father also expressed some concerns regarding the emotional health of the children. In particular, Father was concerned that Mother had taken the oldest child off of his ADHD medicine, while the youngest child had shown some behavioral issues, including hitting his brother with a stick, making fun of other children, and making obscene gestures.

Father admitted that he did not always provide health insurance for the children but testified that he lost insurance when he lost his job. According to Father, the children are currently covered under his work health plan. Father conceded that he had never provided Mother any documents related to this insurance; Father claimed, however, that he could not provide a card or insurance number to Mother because the insurance was "paperless." When asked how Mother was able to use the insurance without this information, Father testified as follows: "I'm not real sure. I'd have to come here and take them to the doctor and show them my insurance with my name on it."[4]

Ms. Truglio generally supported Father's testimony regarding the close, loving relationship between herself, Father, and the children. Ms. Truglio is a registered nurse working in a children's hospital. She is currently in school to obtain her licensure as a nurse practitioner. During the pendency of this matter, Mother, Father, and Ms. Truglio were required to take drug tests.[5] Ms. Truglio tested positive for Xanax, which she testified she was prescribed to help with test anxiety during the period when she was taking her nursing exams. Ms. Truglio testified that she has taken part in the parenting of the children, including taking them to doctor's visits. During one visit, Ms. Truglio stated that the oldest child reported that because Mother could no longer use a belt as punishment, Mother and Mr. Collier "were going to hit [the children] on the side of the

---

[4] Even Father's attorney did not appear to credit Father's testimony, replying "That doesn't really make a lot of sense to me."

[5] The testimony is not clear as to whether Mr. Collier was likewise required to undergo drug screening.

head and in the ear." According to the child, the youngest child received the brunt of this punishment because "he's more misbehaved."

The trial court issued its opinion on November 16, 2017. The trial court first determined that Father was in willful contempt of court for one violation of the parties' parenting plan, fining Father $50.00. With regard to the contempt allegations against Mother, the court found that Father failed to prove any of his allegations.

Next, the trial court considered Father's counter-petition to modify the parenting plan. First, the court noted that it was undisputed that there was a material change in circumstances given the parties' competing petitions to modify. Additionally, the trial court cited Father's move to New Jersey and Mother's criminal charges. The trial court therefore moved on to consider the children's best interests pursuant to Tennessee Code Annotated section 36-6-106, discussed in detail *infra*. Considering each of the factors outlined by the statute, the trial court concluded that it was in the best interests of the children that Father be named primary residential parent. Finding that Father's parenting plan was unduly restrictive, the trial court outlined its own parenting plan, awarding Father 255 days to Mother's 110 days. Mother was required to bear the costs of transporting the children to visitation. However, the trial court awarded Mother a downward deviation for travel expenses. Finally, the trial court ruled that both parties would be responsible for their respective attorney's fees. A final judgment, parenting plan, and child support worksheet were entered on December 8, 2017. With Father's monthly income of $5,720.00, Mother's monthly income of $2,946.00, and a $200.00 downward deviation for travel expenses, Mother's final child support obligation was set at $89.00 per month. Mother timely appealed to this Court.

## Issues Presented

Mother raises four issues in this appeal, which are taken and slightly restated from her brief:[6]

1. Whether the permanent parenting plan ordered by the court is in the best interest of the children.
2. Whether the trial court erred in requiring mother to provide all transportation for parenting time.
3. Whether the trial court erred in failing to award Mother her attorney fees.
4. Whether the court should award Appellant attorney fees and costs incurred for this appeal.

In the posture of Appellee, Father also requests an award of attorney's fees incurred in defending this appeal.

## Discussion

---

[6] Mother is not represented by trial counsel in this appeal, but by a different attorney.

# I.

Decisions involving the custody of a child are among the most important decisions faced by the courts. *Steen v. Steen*, 61 S.W.3d 324, 327 (Tenn. Ct. App. 2001). When faced with a request to modify custody, courts generally favor the existing custody arrangement, on the premise that children tend to thrive in a stable environment. *Aaby v. Strange*, 924 S.W.2d 623, 627 (Tenn.1996); *Hoalcraft v. Smithson*, 19 S.W.3d 822, 828 (Tenn. Ct. App. 2001). Thus, there is "a strong presumption in favor of continuity of placement" of a child. *Morris v. Morris*, No. M2001-02275-COA-R3-CV, 2002 WL 31059222, at *2 (Tenn. Ct. App. Sept. 17, 2002) (quoting *Bah v. Bah*, 668 S.W.2d 663, 666 (Tenn. Ct. App. 1983)); *see also* Tenn. Code Ann. § 36-6-106(a)(3) (listing continuity as a factor in custody decisions). An existing custody order is considered res judicata on the facts as they existed at the time the order was entered. *Steen*, 61 S.W.3d at 327. However, "Tennessee courts are statutorily authorized to modify custody arrangements as necessitated by intervening changes in circumstances." *Conner v. Conner*, No. W2007-01711-COA-R3-CV, 2008 WL 2219255, at *2 (Tenn. Ct. App. May 29, 2008). Under Tennessee Code Annotated section 36-6-101(a)(2)(B), the party seeking modification of the parenting plan to change the designation of the primary residential parent has the burden of proving a material change in circumstances. *See Taylor v. McKinnie*, No. W2007-01468-COA-R3-JV, 2008 WL 2971767, at *3 (Tenn. Ct. App. Aug. 5, 2008) (citing *Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002)). Only if the court finds a material change in circumstance does it proceed to consider whether changing custody is in the child's best interest. *Boyer v. Heimermann*, 238 S.W.3d 249, 259 (Tenn. Ct. App. 2007).

"Trial courts have broad discretion to fashion custody and visitation arrangements that best suit the unique circumstances of each case, and the appellate courts are reluctant to second-guess a trial court's determination regarding custody and visitation." *Reeder v. Reeder*, 375 S.W.3d 268, 278 (Tenn. Ct. App. 2012) (citing *Parker v. Parker*, 986 S.W.2d 557, 563 (Tenn. 1999)); *see also C.W.H. v. L.A.S.*, 538 S.W.3d 488, 495 (Tenn. 2017) (quoting *Armbrister v. Armbrister*, 414 S.W.3d 685, 693 (Tenn. 2013)) ("[D]etermining the details of parenting plans is 'peculiarly within the broad discretion of the trial judge."). "Decisions concerning custody and visitation often hinge on subtle factors, such as the parents' demeanor and credibility during the proceedings." *Reeder*, 375 S.W.3d 268, 278–79 (citing *Adelsperger v. Adelsperger*, 970 S.W.2d 482, 485 (Tenn. Ct. App. 1997)). We therefore do not "tweak [parenting plans] . . . in the hopes of achieving a more reasonable result than the trial court." *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001). In weighing the preponderance of the evidence, the trial court's findings of fact that are based on witness credibility are given great weight, and they will not be overturned absent clear and convincing evidence to the contrary. *In re Adoption of A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2002). Thus, a trial court's decision regarding custody will be set aside only when it "falls outside the spectrum of rulings that might

reasonably result from an application of the correct legal standards to the evidence found in the record." *Id.*

This discretion extends to the question of which parent should be named primary residential parent. *See Kathryne B.F. v. Michael David B.*, No. W2014-01863-COA-R3-CV, 2015 WL 4366311, at *8 (Tenn. Ct. App. July 16, 2015) (quoting *In re Shayla H.*, No. M2013-00567-COA-R3-JV, 2014 WL 2601564, at *5 (Tenn. Ct. App. June 9, 2014)) ("'[T]rial courts have broad discretion in determining which parent should be the primary residential parent[.]'"). "Thus, 'the ultimate question as to who should be the primary residential parent on appeal is whether the trial court abused its discretion in its selection.'" *Id.* (quoting *Maupin v. Maupin*, 420 S.W.3d 761, 770 (Tenn. Ct. App. 2013)). While trial courts are afforded broad discretion in this area, "they still must base their decisions on the proof and upon the appropriate application of the applicable principles of law." *Gaskill v. Gaskill*, 936 S.W.2d 626, 631 (Tenn. Ct. App. 1996) (citing *D. v. K.*, 917 S.W.2d 682, 685 (Tenn. Ct. App. 1995)).

Here, the trial court found a material change in circumstances sufficient to consider a change in the designation of primary residential parent, and Mother has not appealed that finding.[7] As such, we proceed to consider the primary issue in this appeal: whether the trial court correctly determined that it was in the children's best interests for Father to be named primary residential parent based on the factors contained in Tennessee Code Annotated section 36-6-106(a).

The factors contained in section 36-6-106(a) are non-exclusive. *Beyer v. Beyer*, 428 S.W.3d 59, 71 (Tenn. Ct. App. 2013). "Determining a child's best interest is a 'fact-sensitive inquiry'" that does not call for "'rote examination of each of [the relevant] factors and then a determination of whether the sum of the factors tips in favor of or against the parent. The relevancy and weight to be given each factor depends on the unique facts of each case.'" *Solima v. Solima*, No. M2014-01452-COA-R3-CV, 2015 WL 4594134, at *4 (Tenn. Ct. App. July 30, 2015) (quoting *In re Marr*, 194 S.W.3d 490, 499 (Tenn. Ct. App. 2005)). Consequently, "the determination of what is in a child's best interest could turn on a single factor." *Paschedag v. Paschedag*, No. M2016-00864-COA-R3-CV, 2017 WL 2365014, at *4 (Tenn. Ct. App. May 31, 2017), *perm. app. denied* (Tenn. Oct. 4, 2017) (citing *In re Marr*, 194 S.W.3d at 499).

In this case, the trial court made detailed findings as to each relevant factor; we will therefore consider each factor in turn:

1. **The strength, nature, and stability of the child's relationship with each parent, including whether one (1) parent has performed the majority of parenting responsibilities relating to the daily needs of the child; . . . .**

---

[7] Specifically in her brief, Mother asserts that both parties "conceded" that a material change in circumstances occurred.

The trial court made the following findings with regard to this factor:

> Mother testified that she loves the children and wants to be around each of them. The court finds this testimony to be credible. There is no other testimony concerning Mother's daily responsibilities relating to the daily needs of the children.
>
> Father testified that he had a good relationship with the children and was a primary caregiver when he was with the children. Father testified that he would meet their daily needs, including get the children to school, church and prepare meals. The court finds that Father based upon his testimony, has a strong and stable relationship with the children. Mother also testified that Father was a good parent. The court finds this testimony to be credible.

Here, like many of the factors that follow, the trial court made detailed findings concerning the evidence but did not specifically state which parent each factor favored. While some facts cited clearly favor one parent over the other, other factors, like factor (1) are less clear. On appeal, Mother argues that this factor favors her because she has been the children's primary residential parent and the trial court declined to find that most of the failures alleged by Father had actually occurred, such as the allegations that Mother was not properly providing food for the children. The evidence shows that both parents have a strong emotional connection with the children and that Mother has been the children's primary caregiver. There can also be no dispute, however, that Mother experienced a period of drug addiction that prevented her from appropriately providing for the children's daily needs. In addition, it appears that Father and Ms. Truglio have taken on considerable portions of the parenting role, including obtaining medical care for the children. While not strongly slanted toward either parent, we conclude that this factor favors Father.

2. **Each parent's or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child. In determining the willingness of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, the court shall consider the likelihood of each parent and caregiver to honor and facilitate court ordered parenting arrangements and rights, and the court shall further consider any history of either parent or any caregiver denying parenting time to either parent in violation of a court order; . . . .**

With regard to this factor, the trial court found as follows:

Father testified that he has performed past parenting responsibilities, including being a primary caregiver, and has and would get the children to school, church and meals. The court finds this testimony to be credible. There was no testimony concerning Mother's past and potential for future parenting responsibilities. Due to Mother's drug addiction, she did have problems getting the children to school. Mother has the potential to perform the parenting responsibilities as long as she does not have a relapse from her drug addiction. There was no testimony concerning any history of either party denying the other party parenting time in violation of a court order.

Again, the trial court's finding does not expressly state which parent this factor favors. As previously discussed, Mother's drug addiction caused her to have difficulty getting the children to school on time and, as alleged by Father, in performing other necessary tasks for the children. By the time of trial, however, it did appear that Mother was actively maintaining her sobriety, as well as her probation. We agree with the trial court that there do not appear to be any issues with either parent facilitating a relationship with the other parent in any way. Although we have concerns about Mother's past drug use, it does appear that she has done everything possible to maintain her sobriety. As such, we conclude that this factor favors neither party.

### 3. Refusal to attend a court ordered parent education seminar . . . .

The trial court found that both parties attended a parenting education seminar at the time of the divorce. As such, this factor favors neither party.

### 4. The disposition of each parent to provide the child with food, clothing, medical care, education and other necessary care; . . . .

The trial court found the following with regard to this factor:

Father has the disposition to provide the children with food, clothing, medical care, education, and necessary care. He is gainfully employed, making $33.00 per hour. Father has purchased a home that based upon his testimony which the court finds to be credible is satisfactory for the housing of the minor children. Father has medical insurance and the ability to care for the children's medical needs. Father has substantially complied with the child support orders. The court finds that Father is not dependent upon any third parties to provide for the children.

Although there was no testimony concerning Mother's disposition to provide for the children, she is gainfully employed making $17.00 per hour. Mother resides with her boyfriend, Shane Collier, who provides a residence for her and the children. Mr. Collier provided for Mother and the children while she was unemployed due to her drug issues. Mother and Mr. Collier

are not married, and there is no legal duty for Mr. Collier to continue to help provide for them. As long as Mother does not have a relapse from her addiction to drugs and a separation of her and Mr. Collier, she has the disposition to provide for food, clothing, medical care, education, and other necessary care.

Although the trial court did not expressly state which parent this factor favors, we conclude that it favors Father. Here, both parties are currently gainfully employed. While both parties have experienced periods of unemployment, Mother's unemployment was due to her drug use, rather than circumstances outside her control. In addition, Mother was clear in her testimony that some of her stability in terms of income and housing is provided by her boyfriend, a relationship that may terminate at any time. Likewise, Mother's ability to provide for the needs of the children depends on her ability to maintain her sobriety. Still, unlike Father, whose testimony concerning the children's health insurance was somewhat illogical, there is no dispute that when Father was unable to provide health insurance for the children, Mother promptly enrolled the children in TennCare.

On the whole, however, Father's ability to provide for the children is stronger than Mother's. We concede that individuals and courts cannot say with certainty that relationships and situations will last, but Father's situation appears relatively more stable than Mother's. He has dated his current partner for several years, they are engaged to be married, and they own a home together. Ms. Truglio is likewise gainfully employed, and both she and Father are seeking advancements in their careers through education. In addition, there are no allegations that Father was ever unable to parent the children due to drug use. Although there is some concern about the health insurance, the trial court specifically found that Father had indeed obtained health insurance for the children. As such, we conclude that this factor favors Father.

5. **The degree to which a parent has been the primary caregiver, defined as the parent who has taken the greater responsibility for performing parental responsibilities; . . . .**

The trial court found that Mother has been the children's primary caregiver. The evidence does not preponderate against this finding and it therefore favors Mother.

6. **The love, affection, and emotional ties existing between each parent and the child; . . . .**

The trial court made the following findings at to this factor:

> While there is no testimony concerning Mother's love, affection and emotional ties between her and each of the children, she did testify that she loves the children and wants to be around them. Mother also testified that

- 10 -

the children loved Father and that he is a good parent. The court finds this testimony to be credible.

Father testified that he has always been close to the children and that they love being in New Jersey with him. The court also finds this testimony to be credible.

Thus, it appears that the trial court found that this factor favors neither party, a finding that Mother does not dispute.

**7.  The emotional needs and developmental level of the child; . . . .**
According to the trial court's finding on this factor,

Father testified that the younger child has behavioral problems. Father is concerned that the younger child randomly abuses his brother and even hits him with a stick and uses inappropriate hand gestures. Father also testified that the younger child has been harming animals. Father's concern is that the children's emotional needs and developmental level have not been met by Mother. There was no testimony from Mother concerning her meeting the emotional needs and developmental level of the children.

To the extent that the trial court's findings can be construed as favoring Father, Mother disputes this finding. Mother points out that no medical professional testified as to the children's emotional needs or problems that either of the children had experienced. Likewise, Mother correctly points out that there was simply no testimony that the younger child has ever harmed an animal. Although the youngest child's behavior in striking his brother may be concerning, we cannot conclude that this single incident is outside the realm of normal childhood behavior or that it necessitates a finding that the emotional needs of the child are not being met by Mother. On the whole, it appears that the children are developmentally appropriate and have no emotional issues that are being ignored by either party. As such, this factor favors neither party.

**8. The moral, physical, mental and emotional fitness of each parent as it relates to their ability to parent the child. . . .**

The trial court made the following findings with regard to this factor:

Father testified that he did not have any moral, mental, and emotional fitness which would cause him not to be able to parent the children. Prior to the entry of the permanent parenting plan, Father was diagnosed with a bi-polar disorder and was taking medication. Father testified that he is no longer suffering from any depression or bi-polar disorder.

As stated above, Mother has had a history of drug addiction. At this time, Mother's drug addiction is not affecting her ability to parent the children.

Here, Mother chose to engage in crime to support her drug addiction. There can be no dispute, however, that Mother has made considerable effort to address her addiction issues and is currently successful in her effort to maintain sobriety. Additionally, Mother took full responsibility for the issues related to her crimes. Father is not without his own mental health concerns, which he attempted to minimize at trial. Indeed, Father testified that he once received in-patient treatment for bi-polar disorder. By the time of trial, however, it appears that Father was not experiencing issues related to that diagnosis. On the whole, then, it appears that at the time of trial, both parents had the necessary moral, physical, mental, and emotional fitness to parent the children. As such, this factor favors neither party.

9. **The child's interaction and interrelationships with siblings, other relatives and step-relatives, and mentors, as well as the child's involvement with the child's physical surroundings, school, or other significant activities; . . . .**

As the trial court found,

Mother testified that she is residing with Shane Collier who is involved in the children's lives and would help her with school and other significant activities of the children. There is no testimony concerning any other relatives or step-relatives of Mother that are involved in the children's lives.

Father testified that he has family support in the State of New Jersey and a lot of friends that will help him with the children. Father also has a fiancé, who will be residing with the children. Father testified that she has a great relationship with the children, does activities with them and truly cares for the children. Father and his fiancé contribute to a college fund for the children. His fiancé stated that she would take the children to school, church and provide for their spiritual nurturing after church. The court finds this testimony to be credible.

Although the trial court again did not expressly state which parent this factor favored, we conclude that it favors Father. Here, both parties live with significant others. While Father testified that he and his fiancé are planning to marry, Mother's testimony concerning the future of her relationship was less sure. The evidence also shows that Ms. Truglio has a close and stable relationship with the children. The evidence concerning the relationship between the children and Mother's boyfriend was scant. Likewise, while Father testified as to the family support that he can receive in parenting the children in

New Jersey, Mother presented no similar evidence concerning support in Tennessee.[8] Although Mother generally takes issue with Father's testimony on this issue, arguing that the evidence was not corroborated and could not be questioned due to the distance between Tennessee and New Jersey, the trial court expressly found the testimony on this issue to be credible. As previously discussed, we do not overturn findings based on credibility absent clear and convincing evidence to the contrary. *In re Adoption of A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2002). Because Mother has pointed to no evidence to overturn the trial court's express credibility findings, we conclude this factor favors Father.

### 10. The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment; . . . .

The trial court's findings on this factor were rather sparse: "There was no testimony concerning the children living in a stable and satisfactory environment in Mother's custody. She did testify that she resided with Shane Collier and lived in his residence." As previously discussed, Mother was named as the children's primary residential parent following the divorce, and the children therefore have spent more of their time in her custody. At times, however, Mother did not provide safe, stable care for the children due to her drug use, sometimes driving with both children while under the influence of drugs. Any continuity that Mother can offer was therefore undermined by her own actions. As such, we conclude that this factor favors neither party.

### 11. Evidence of physical or emotional abuse to the child, to the other parent or to any other person. . . .

The trial court made the following findings with regard to this factor:
There was no testimony concerning Father's physical or any emotional abuse to the children. Father asked that Mother not use corporal punishment on the children in the form of hitting them with a belt. The children were taken to a doctor by Father's fiancé and the children told the doctor, which was uncontradicted that Mother hit them on the side of the head because she could not hit them with a belt. The court finds this testimony to be credible.

Again, Mother disputes the trial court's findings related to this factor, arguing that the evidence does not rise to the level of abuse. Here, Mother stopped hitting the children

---

[8] In her brief, Mother argues that the evidence shows that Mother has family support in the form of her own mother, the children's maternal grandmother, as maternal grandmother's "residence was mentioned several times throughout the testimony of the witnesses." In support, Mother cites to her testimony concerning the fact that she lists her mailing address as maternal grandmother's home, even while residing with her boyfriend. Respectfully, evidence that Mother has mail sent to maternal grandmother's home does not show that maternal grandmother provides support for Mother with the children or that the children have a close relationship with Mother's extended family.

with a belt when Father expressed his displeasure at this practice. Rather than find other non-physical methods of punishment, the evidence shows that Mother slapped the children on the side of the head. Mother offered no testimony to rebut this allegation and points to no evidence to undermine the trial court's credibility finding. Clearly, hitting a child in the head as a form of discipline is not appropriate, particularly where the parent was aware that the child's other parent objected to physical punishments. Although we agree with Mother that this evidence does not rise to the level of severe abuse, it is concerning to this Court. As such, this factor favors Father.

12. **The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child; . . . .**

According to the trial court,

There was no testimony concerning any character or behavior problems with any person who resides or frequents the home of Mother. Mother testified that Father's fiancé tested positive for Xanax at a prior court hearing. Father's fiancé had a prescription for Xanax.

Father testified that there are no character or behavior problems with anybody who frequents his home, including any drug use.

Mother does not dispute that this factor favors neither party.

13. **The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request.**

The trial court did not hear the preferences of the children; this factor favors neither party.

14. **Each parent's employment schedule, and the court may make accommodations consistent with those schedules; . . . .**

The trial court found that there was "no testimony concerning any problems with either parent's employment schedule for the court to make any accommodations." We agree. Here, Father testified that he works five days per week, while Ms. Truglio works three twelve hour shifts per week. Mother testified that her schedule "varies week to week," but there is no evidence that either parent was unable to care for the children due to work scheduling. As such, this factor favors neither party.

Based on these factors, the trial court concluded that naming Father the children's primary residential parent was in their best interest but held that the limited parenting time awarded to Mother in Father's proposed parenting plan was not appropriate. We agree with the trial court. Here, the bulk of factors favor neither party. Of the factors that weigh in favor of a particular party, however, the majority favor Father. In particular, the evidence concerning Father's stability, his support network in New Jersey, and Mother's decision to place her drug addiction before the mental and physical well-being of the

children for even a period of few years, strongly support naming Father primary residential parent. Indeed, only a single factor strongly favors Mother, the fact that she has been the children's primary caregiver since the divorce. Given Mother's concession that a material change in circumstances has occurred, as well as the other evidence presented, however, this factor is not sufficient to militate in favor of keeping Mother as primary residential parent. The trial court's decision to designate Mother as primary residential parent is therefore affirmed.

## II.

Mother next argues that the trial court erred in requiring Mother to bear all of the transportation costs for her visits with the children. Here, the trial court found that Father's income exceeds Mother's by a considerable amount. While Father earns approximately $5,720.00 per month, Mother earns a little over half that amount, $2,946.00, approximately a 66%/34% ratio. As Mother points out in her brief, "[a]ssigning travel expenses for visitation is an issue on which the relative financial resources of the parties may be considered." *Bowers v. Bowers*, 956 S.W.2d 496, 499–500 (Tenn. Ct. App. 1997) (citing *Dodd v. Dodd*, 737 S.W.2d 286, 292 (Tenn. Ct. App. 1987)). Given Father's higher income and the fact that he voluntarily chose to move to New Jersey, Mother contends that Father should be required to shoulder the entirety of the children's travel expenses.

We do not disagree with Mother's general contention that it would likely be unfair to have her bear the entirety of travel expenses given Father's income and his decision to leave the vicinity where Mother and the children lived. We note, however, that the trial court's ruling that Mother bear these costs is offset by the trial court's decision to award Mother a deviation from child support of $200.00 per month for court-ordered travel expenses, a fact that Mother fails to mention in this portion of her brief. As such, Mother's presumptive child support obligation of $289.00 was reduced to only $89.00. Father does not take issue with this deviation. Likewise, we conclude that the trial court's decision was not inequitable or an abuse of discretion. The trial court's ruling with regard to travel expenses is therefore affirmed.

## III.

Mother next argues that the trial court erred in failing to award her attorney's fees and also seeks an award of attorney's fees on appeal pursuant to Tennessee Code Annotated section 36-5-103(c). Under the same statute, Father seeks an award of attorney's fees incurred on appeal. At the time of the initiation of this case, section 36-5-103(c) provided as follows:

> The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any

suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

Tenn. Code Ann. 36-5-103(c) (2016).[9] An award of attorney's fees under this statute is within the trial court's discretion. *See id.*; ***Huntley v. Huntley***, 61 S.W.3d 329, 341 (Tenn. Ct. App. 2001) (citing ***Richardson v. Richardson***, 969 S.W.2d 931, 936 (Tenn. Ct. App. 1997)) ("The award of attorneys' fees is within the trial court's discretion."). While this statute also authorizes an award of attorney's fees incurred on appeal, the award is likewise left to this Court's discretion. *See* ***Eberbach v. Eberbach***, 535 S.W.3d 467, 477 (Tenn. 2017) ("[W]hen appellate attorney's fees are requested pursuant to statutes like . . . section 36-5-103(c), which expressly permit the court to exercise its discretion, the Court of Appeals should analyze any such request by exercising its discretion to determine whether an award to the prevailing party is appropriate.").

Here, we conclude that the trial court did not abuse its discretion in declining to award Mother attorney's fees in this action. We likewise decline to award Mother attorney's fees on appeal. Here, Mother was not successful in defending against Father's petition to change custody either in the trial court or in this Court. We have previously held that a parent was entitled to attorney's fees under section 36-5-103(c) when the parent "prevailed on the issue concerning the adjudication of the change of custody of the children[.]" ***Marlow v. Parkinson***, 236 S.W.3d 744, 753 (Tenn. Ct. App. 2007). Father did prevail in this appeal in defending the trial court's decision to change the designation of the children's primary residential parent. Still, Father's income is nearly double that of Mother's, and the argument section of Father's brief is largely a recitation of the trial court's findings with little actual argument. Under these circumstances, we decline to award attorney's fees to Father.

## Conclusion

---

[9] Section 36-5-103(c) was amended in July 2018 to provide the following:

A prevailing party may recover reasonable attorney's fees, which may be fixed and allowed in the court's discretion, from the non-prevailing party in any criminal or civil contempt action or other proceeding to enforce, alter, change, or modify any decree of alimony, child support, or provision of a permanent parenting plan order, or in any suit or action concerning the adjudication of the custody or change of custody of any children, both upon the original divorce hearing and at any subsequent hearing.

2018 Tennessee Laws Pub. Ch. 905 (H.B. 2526). The amendment took effect on July 1, 2018, and only applies "to actions commenced on or after that date." *Id.* As such, the amended version of this statute does not apply in this case.

The judgment of the Hardin County General Sessions Court is affirmed, and this cause is remanded to the trial court for all further proceedings as may be necessary and consistent with this Opinion. Costs of this appeal are taxed to Appellant Samantha Audrey Haak, for which execution may issue if necessary.

_____

J. STEVEN STAFFORD, JUDGE